UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICROSOFT CORPORATION, a Washington Corporation, | ) ) ) | CASE NO. C14-1772RSM |
| Plaintiff, | ) ) ) | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| v. | ) ) | |
| MOUNTAIN WEST COMPUTERS, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## I.      INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Dkt. #23.  Defendants argue that this Court lacks personal jurisdiction over them because they are non-residents that lack sufficient minimum contacts with the State of Washington.  Plaintiff argues that it has met the minimum threshold for demonstrating specific jurisdiction in this Court.  Dkt. #29.  For the reasons set forth below, this Court agrees with Plaintiff and DENIES Defendants' motion to dismiss.

## II.      BACKGROUND

Plaintiff develops, distributes, and licenses various types of computer software, including operating system software (such as Microsoft Windows) and productivity software

ORDER
PAGE - 1

(such as Microsoft Office).  Dkt. #1 at ¶ ¶ 11-12.  Microsoft holds registered copyrights in the various different versions of these products, and has registered trademarks and service marks associated with the products.  *Id*. ¶ ¶ 13-17.

Microsoft has implemented a wide-range of initiatives to protect its customers and combat theft of its intellectual property, including its product activation system, which involves the activation of software through product keys.  *Id.* ¶ 26.  A Microsoft product key is a 25-character alphanumeric string generated by Microsoft and provided either directly to Microsoft's customers or to Microsoft's original equipment manufacturer ("OEM") partners.  *Id.* ¶ ¶ 27-30.  Generally, when customers or OEMs install Microsoft software on a device, they must enter the product key.  *Id.*  Then, as part of the activation process, customers and/or OEMs voluntarily contact Microsoft's activation servers over the Internet and transmit the product keys and other technical information about their device to the servers.  *Id.*  Because Microsoft software is capable of being installed on an unlimited number of devices, Microsoft uses the product activation process to detect piracy and protect consumers from the risk of non-genuine software.  *Id.*  Microsoft alleges that for some time, Defendants' IP address has been used to activate numerous Microsoft product keys.  *Id.* at ¶ ¶ 35-41.

Defendants, Mountain West Computers, Inc. ("MWC"), Glen Sanders and Roger Hulet, are residents of Utah.  Dkts. #24 at ¶ ¶ 2 and 10 and #25 at ¶ ¶ 2 and 10.  According to Defendants, MWC's business is primarily related to information technology ("IT") services and sales of computers and related hardware to the customers to which it provides IT services in Utah.  Dkts. #24 at ¶ 3 and #25 at ¶ 3.  MWC focuses its business on servicing small city and county governments, school districts, and small businesses.  *Id.*  MWC enters into contracts to provide IT services to these customers that are generally too small to justify having an IT

department in-house.  Dkts. #24 at ¶ 3 and #25 at ¶ 3.  Also according to Defendants, MWC makes no effort to market outside of the limited geographic area where it conducts its business. Dkts. #24 at ¶ 4 and #25 at ¶ 4.  MWC maintains a website, www.mw-computers.com.  *Id*. at ¶ 5.  MWC does not conduct any advertising or marketing outside of Utah.  *Id.*

Over the past three years, all of MWC's sales and services have been to its customers in Utah.  *Id.* at ¶ 6.  On occasion, MWC has shipped products out-of- state when a local company has a satellite office or employee located out-of-state.  *Id.*  In those instances, the sale was generated locally in Utah.  *Id.*  Likewise, MWC has occasionally sent an invoice to an out-of-state company based upon sales and/or services provided to a local customer where, for example, the local company is a branch office of a larger company.  *Id.*

Defendants Roger Hulet and Glen Sanders are shareholders and principals of MWC.  *Id.* at ¶ 7.  Besides Mr. Hulet and Mr. Sanders, MWC employs four full-time employees and four part-time employees.  *Id.*

Defendants assert that, in the past three years, MWC has not shipped any product to the State of Washington.  *Id.* at ¶ 8.  Within the past three years, no MWC employee has ever entered the State of Washington for purposes of selling a product, providing any service, attending any meeting associated with the business of MWC, or attending any sort of conference related to the business of MWC.  *Id.*  While MWC does not collect data on the residency of its customers, MWC is unaware of ever providing any service or making any sale to any Washington business or resident.  *Id.* at ¶ 9.  The only products that MWC is aware of purchasing with any connection to the State of Washington are the various Microsoft products

ORDER
PAGE - 3

that MWC installs on new and used products that MWC sells.  Dkts. #24 at ¶ 9 and #25 at ¶ 9.

MWC purchases these products through third party vendors.  *Id.*[1]

Mr. Hulet and Mr. Sanders reside in Cedar City, Utah.  *Id.* at ¶ 10.  Neither has ever resided in the State of Washington.  *Id.*  Neither Mr. Hulet nor Mr. Sanders has conducted any business in the State of Washington in the past three years.  *Id.*  Neither has traveled to Washington for business purposes in the past three years.  *Id.*  Neither Mr. Hulet nor Mr. Sanders own property in the State of Washington.  *Id.*

While the defendants are aware that Microsoft is a Washington-based company, in contacting servers to activate Microsoft software, the defendants had no knowledge that the servers were physically located within the State of Washington.  *Id.* at ¶ 11.

In the past three years, MWC has purchased Microsoft products from four vendors: Software Supply Group, LLC (www.softwaresupplygroup.com) ("SSG"); Snagg Stuff, LLC (www.snaggstuff.com) ("SS"); Digisoft, LLC (www.digisoftstore.com); and Ingram Micro, Inc. *Id.* at ¶ 12.  All of these purchases have been made through the vendors' websites.  *Id.*

Defendants assert that, in activating Microsoft software that it purchased from the four vendors identified above, MWC had no knowledge that any such software was invalid.  *Id.* at ¶ 13.  Defendants further assert that, in activating Microsoft software, MWC never received any type of warning that the software could be invalid.  *Id.* at ¶ 14.  MWC relied upon the fact that it successfully activated the software, and did so without any indication that there could possibly be a problem with such activations, to confirm that the software that it purchased was valid.  Dkts. #24 at ¶ 14 and #25 at ¶ 14.

[1]  Defendants initially asserted in their motion that they were unaware of ever purchasing these products through a vendor located in Washington.  However, after reviewing Plaintiff's response, in which Plaintiff noted that one of Defendants' vendors is a resident of Seattle, WA, Defendants now assert that they were unaware of such fact until they received Plaintiff's response brief.  Dkts. #35 at ¶ 14 and #36 at ¶ 3.

ORDER
PAGE - 4

Further, Defendants state that prior to being served with a Complaint and Summons in this lawsuit, MWC had no knowledge that it might have purchased invalid software from one or more third party vendors. *Id.* at ¶ 15. Prior to this lawsuit, MWC had never been accused of any violation of intellectual property laws. None of the Defendants have ever been accused or convicted of criminal activity. *Id.* Defendants now bring the instant motion to dismiss for lack of personal jurisdiction.

### III.   DISCUSSION

**A.  Standard of Review for Motions Under 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of his Complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Schwarzenegger,* at 800. Uncontroverted factual allegations must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

ORDER
PAGE - 5

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.* 95 Wn.App. 462, 465, 975 P.2d 555 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger,* at 800-01.

The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). General jurisdiction exists over a non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger,* at 801. In the absence of general jurisdiction, the court may still exercise specific jurisdiction over a non-resident defendant. To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related

activities; and (3) the exercise of jurisdiction would be reasonable.  *Easter v. American West Financial,* 381 F.3d 948, 960-61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

### B.  General Jurisdiction

A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are "substantial" or "continuous and systematic." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).  As the Ninth Circuit has recently noted, "[g]eneral jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state 'are so constant and pervasive as to render it essentially at home' in the state." *Martinez v. Aero Caribbean*, 2014 U.S. App. LEXIS 16163, *8 (9th Cir. Aug. 21, 2014)(citation omitted).  Plaintiff does not dispute that general jurisdiction is lacking in this matter.  Accordingly, the Court turns to whether it has specific jurisdiction.

### C.  Specific Jurisdiction

As noted above, in the Ninth Circuit, specific jurisdiction is analyzed using a three-part test: First, the nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; second, the claim must be one which arises out of or relates to the nonresident defendant's forum-related activities; and third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.  If the plaintiff is successful at establishing the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.

ORDER
PAGE - 7

The first prong of the test is analyzed under either a "purposeful availment" standard or a "purposeful direction" standard, which are two distinct concepts. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Generally for claims sounding in contract, courts apply a "purposeful availment" analysis, asking whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. For claims sounding in tort, courts generally apply a "purposeful direction" test, looking to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Schwarzenegger*, 374 F.3d at 802-03.

To establish purposeful direction, the plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). In cases involving allegations such as trademark infringement and misappropriation the Ninth Circuit focuses on "purposeful direction," applying the "*Calder* effects" test. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because [plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework."); *Facebook, Inc. v. Pedersen*, 868 F. Supp.2d 953, 958 (N.D. Cal. 2012) ("The Court finds that the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because [the plaintiff] alleges trademark dilution and infringement, both of which are tort-like causes of action.").

///

///

ORDER
PAGE - 8

1.  *Purposeful Direction of Actions At the Forum State*

Defendants concede that their intended purchases of Microsoft software likely satisfy the first prong of the test. Dkt. #23 at 10. However, Defendant argues that Plaintiff has failed to establish the second *Calder* element and has therefore failed to satisfy the purposeful-direction prong of the Ninth Circuit's test for specific personal jurisdiction. Plaintiff argues that Defendants have purposefully aimed their activities at this forum because they knew Microsoft was a resident of Washington, and because they both willfully infringed Microsoft's trademarks and copyrights and they made an affirmative statement to Microsoft that the software was genuine and licensed which induced Microsoft to activate the unlicensed software. Dkt. #29 at 10.

Plaintiff relies in part on *Washington Shoe*, *supra*, for the proposition that when a defendant is accused of infringing a copyright while knowing that the copyright owner is located in a certain jurisdiction, its conduct is "expressly aimed" at that jurisdiction:

> We have repeatedly stated that the "express aiming" requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (quotations omitted); *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding in non-copyright case that the express aiming requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television Inc.*, 523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998) (holding that the fact that defendant "willfully

infringed copyrights owned by" plaintiff known to be in California "alone is sufficient to satisfy the 'purposeful availment' requirement").

But whether this is still good law is doubtful in light of the Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (*en banc*) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority[,] . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). *Walden* reversed the Ninth Circuit to hold that personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State" and that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122. It expressly extended this holding to the intentional tort context, explaining that its holding was rooted in the proposition that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." *See id.* at 1122-23. The Court rejected the idea, inherent in *Washington Shoe*, that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis. *Id.* at 1124-25.

District courts in the Ninth Circuit have split on whether, and to what extent, *Walden* overruled prior Ninth Circuit law. *Compare Erickson v. Neb. Mach.*, 2015 U.S. Dist. LEXIS 87417. *7-11 (N.D. Cal. Jul. 6, 2015) (finding that *Walden* overrides *Washington Shoe* generally) and *Under a Foot Plant, Co. v. Exterior Design, Inc.*, 2015 U.S. Dist. LEXIS 37596, 2015 WL 1401697, at *4 n.1 (D. Or. Mar. 24, 2015) (holding that *Walden* limited the Ninth Circuit's application of the effects test) *with Leibman v. Prupes*, 2015 U.S. Dist. LEXIS 25906,

ORDER
PAGE - 10

2015 WL 898454, at *8-9 (C.D. Cal. Mar. 2, 2015) *and Exobox Techs. Corp. v. Tsambis*, 2015 U.S. Dist. LEXIS 2157, 2015 WL 82886, at *6 (D. Nev. Jan. 6, 2015) (holding that the Ninth Circuit's pre-*Walden* cases remain good law).  But the courts adhering to the pre-*Walden* cases have not explained how *Washington Shoe*'s holding that "express aiming" is established whenever "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state," *Washington Shoe*, 704 F.3d at 675, can be squared with *Walden*'s express holding that to find personal jurisdiction based on the defendant's "allegedly direct[ing] his conduct at plaintiffs whom he knew" had connections to the forum state is to "improperly attribute[] a plaintiff's forum connections to the defendant." *Walden*, 134 S. Ct. at 1125. This Court agrees with other District Courts that have determined these holdings cannot be reconciled, and that *Walden* overrides *Washington Shoe* generally, and certainly with respect to the specific holding plaintiffs argue in this case.

 *Walden* acknowledges that it does not address intentional torts committed "via the Internet or other electronic means," like the copyright claim at issue here.  *Walden*, 134 S. Ct. at 1125 n.9.  But the Ninth Circuit has not indicated that a different "express aiming" test applies to intentional torts based on whether the Internet was used.  To the contrary, the fact that the Supreme Court held that it would be a violation of the defendant's due process rights to be forced to submit to personal jurisdiction based merely on his or her knowledge of the plaintiff's location suggests that the high court's holding cannot be cabined to torts committed in the non-virtual world.  *See Under A Foot Plant*, 2015 U.S. Dist. LEXIS 37596, 2015 WL 1401697, at *4 & n.1 (applying *Walden* to hold that defendants publishing of copyrighted images on their website did not subject them to personal jurisdiction).

In the only precedential Ninth Circuit decision available at the time of this decision that applies *Walden*, the court held that personal jurisdiction in California could not be based on statements a non-California resident made to another non-California resident, even where those statements allegedly interfered with a sales contract held by the California-based plaintiffs. *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). The court emphasized that the defendant's alleged tortious interference was committed "without entering California, contacting any person in California, or otherwise reaching out to California," and that the alleged injury–an inability to access out-of-state funds–was "not tethered to California in any meaningful way" and "would follow him wherever he might choose to live or travel." *Id.*

The instant case is easily distinguishable. First, Defendants ordered products directly from a vendor located in the forum state. Although Defendants continue to assert that they were unaware that the vendor was located in Seattle, WA, the Court finds such assertions disingenuous. The address of the vendor is located on the bottom of the email confirmations of orders placed with Digisoft, which Defendants themselves provided in discovery. Dkt. #32 at ¶ 8 and Ex. G. Whether Defendants had any occasion to examine the invoices to determine where Digisoft resides, does not negate the fact that they were in fact conducting business in Washington. *See* Dkts. #29 at 22 and #31 at ¶ 9 and Ex. H. Second, Defendants affirmatively contacted Microsoft through internet contact with its servers and by telephone to validate the software it was installing. Regardless of whether Defendants knew where Plaintiff's servers were located, Defendants admit that they knew Microsoft is located in Washington. Even though Defendants' contacts with Plaintiff were made remotely, they knew Plaintiff to be located in and operating out of the State of Washington.

ORDER
PAGE - 12

The allegations in this case are that Defendants accessed Plaintiff's computer servers to unlawfully validate unlicensed software in violation of trademark and copyright laws.   Such allegations, if true, satisfy the "express aiming" element.   The Defendants alleged actions were intentional and directed at Plaintiff.   The alleged actions were not merely contacts with Washington that could have foreseeable effects in Washington.   Here, the alleged actions were aimed at a Washington business.   If the allegations are true, it was not only foreseeable but certain that their conduct would harm Plaintiff in Washington.   Accordingly, the Court finds the conduct allegedly engaged in by the Defendants was expressly aimed at Washington.

As to the final prong of the purposeful direction test, requiring the causing of harm the defendant knows is likely to be suffered in the forum state, the Court finds this has also been met.   Based on the foregoing, the Defendants knew Plaintiff to be located and based in Washington.   If the allegations are true, the Defendants knew that the harm suffered by Plaintiff from their allegedly unlawful conduct which was aimed at Plaintiff would be suffered in Washington.

2.   *Claims Arise or Result from Forum Related Activities*

As noted above, the second part of the test for specific personal jurisdiction directs that the Court determine whether the plaintiff's claims "arise out" of the defendants' forum-related activities.   To do so, the Ninth Circuit has adopted a "but for" analysis.   *See Ballard,* 65 F.3d at 1500 (citing *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)).   Thus, specific personal jurisdiction is proper here only where "but for" Defendants' activities in Washington, Plaintiffs' injuries would not have occurred.

Plaintiff's claims against Defendants are: Copyright Infringement, Trademark Infringement, False Designation of Origin, False Description and Representation of Microsoft Packaging, and Imposition of a Constructive Trust. Dkt. #1 at ¶ ¶ 42-66. These claims are derived from Plaintiff's allegations discussed above that satisfied the purposeful availment/direction prong. But for the alleged conduct of the Defendants, the alleged injuries to Plaintiff would not have occurred. Plaintiff's claims against Defendants are derived from the Defendants' intentional conduct with a third party vendor located in Washington and contact with Plaintiff's servers located in Washington such that the claims arise out of the alleged violating conduct. Moreover, Defendants advance no argument with respect to this prong of the test, choosing only to focus on purposeful availment. *See* Dkt. #23 at 9. Thus, Plaintiff's claims arise out of Defendants' Washington-related activities.

### 3. *Reasonableness of Exercising Jurisdiction*

Finally, the Court must determine whether the exercise of jurisdiction is reasonable. Typically, this Court would examine seven factors: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendants' state; extent of purposeful interjection; and the forum state's interest in the suit. *Brand v. Menlove Dodge,* 796 F. 2d 1070, 1075 (9th Cir. 1986). However, Defendants advance no argument with respect to this prong of the test, choosing only to focus on purposeful availment. *See* Dkt. #23 at 9. Accordingly, this Court concludes that jurisdiction in this forum is reasonable.

///

///

///

ORDER
PAGE - 14

**D. Defendants' Request for Attorney's Fees**

Defendants seek an award of attorney's fees under Washington's long-arm statute.  Dkt. #23 at 17-18.  Given that the Court has denied Defendants' motion to dismiss, no fees will be awarded.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss (Dkt. #23) is DENIED for the reasons discussed above.

DATED this 22nd day of July, 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 15